In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-2015

ROBERT JOHNSON,

*Plaintiff-Appellant,*

*v.*

APNA GHAR, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CV 7752—**Milton I. Shadur**, *Judge.*

ARGUED DECEMBER 5, 2002—DECIDED JUNE 4, 2003

Before BAUER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Robert Johnson sued Apna Ghar, Inc. for discrimination in employment, in violation of Title VII of the Civil Rights Act, asserting that Apna Ghar rejected his job application because he is male. In granting Apna Ghar's motion to dismiss for lack of subject matter jurisdiction, the district court relied on *United States v. Morrison*, 529 U.S. 598 (2000) and *United States v. Lopez*, 514 U.S. 549 (1995), and found that it would be an unconstitutional exercise of the commerce clause to subject Apna Ghar to Title VII. Because we find *Morrison* and *Lopez* inapplicable, and that Apna Ghar is an employer whose business affects commerce, we reverse.

## I.  BACKGROUND

Apna Ghar is an Illinois not-for-profit organization that provides transitional shelter and walk-in social services to victims of domestic violence who are primarily Asian women and children. One of the services it provides is assistance with legal matters. In March 1999, Apna Ghar placed a "help wanted" advertisement in the *Chicago Reader*, a newspaper distributed in Chicago and neighboring suburbs (including some in nearby Indiana), advertising a "legal advocate" position that paid up to $27,000. Robert Johnson submitted an application and resume; Apna Ghar reviewed his resume and informed him it was not going to interview or hire him because he is male and it "preferred a female legal advocate."

Johnson filed a timely charge of discrimination with the Equal Employment Opportunity Commission, which determined there was reasonable cause to believe Apna Ghar discriminated against Johnson because of his gender, attempted to conciliate, and ultimately issued Johnson a right to sue letter. Johnson filed suit in federal court alleging discrimination in violation of Title VII. Apna Ghar filed a Rule 12(b)(1) motion to dismiss, claiming that subject matter jurisdiction was lacking because it was not an "employer" within the meaning of Title VII. The district court determined that "it would impermissibly stretch the Commerce Clause to read that provision (which is the source of power for the enactment of Title VII) as extending to . . . Apna Ghar['s] activity." It therefore granted Apna Ghar's motion to dismiss, and Johnson now appeals.

## II.  ANALYSIS

We review de novo a district court's dismissal under Rule 12(b)(1). *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *see also Selbe v. United States*, 130 F.3d 1265, 1266 (7th Cir. 1997). "When reviewing a dismissal

for lack of subject matter jurisdiction, we note that a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long*, 182 F.3d at 554 (citing *Rueth v. United States Envtl. Prot. Agency*, 13 F.3d 227, 229 (7th Cir. 1993)). When considering such a motion, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Id.* (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)).

Title VII applies to organizations that are "employers," that is, organizations that are "engaged in an industry affecting commerce." 42 U.S.C. § 2000e(b);[1] *Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 205 (1997); *Sharpe v. Jefferson Distrib. Co.*, 148 F.3d 676, 677 (7th Cir. 1998). In Title VII cases, this court has held that "a district court does not lack subject matter jurisdiction in cases where the defendant fails to meet the statutory definition of 'employer.'" *Komorowski v. Townline Mini-Mart & Rest.*, 162 F.3d 962, 964 (7th Cir. 1998) (citing *Sharpe v. Jefferson Distrib. Co.*, 148 F.3d 676, 677 (7th Cir. 1998); *Ost v. W. Suburban Travelers Limo., Inc.*, 88 F.3d 435, 438 n.1

---

[1] Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). A "person" under Title VII "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." *Id.* § 2000e(a). Apna Ghar does not challenge that it has more than 15 employees or that it is a "person" for Title VII purposes.

(7th Cir. 1996)). If Johnson presents "a non-frivolous claim under federal law; no more is necessary for subject-matter jurisdiction. A plaintiff's inability to demonstrate that the defendant [is an 'employer'] is just like any other failure to meet a statutory requirement. There is a gulf between defeat on the merits and a lack of jurisdiction." *Sharpe*, 148 F.3d at 677 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 87-93 (1998); *Ost*, 88 F.3d at 438 n.1); *see also Komorowski*, 162 F.3d at 965-66; *Martin v. United Way of Erie County*, 829 F.2d 445, 447 (3d Cir. 1987) ("'[e]lements of a claim that are called jurisdictional because they relate to Congress's jurisdiction remain questions of the merits, and the Supreme Court has made clear that a court may resolve them only in the manner that the court may resolve all other questions of the merits'") (quoting *Kulick v. Pocono Downs Racings Ass'n, Inc.*, 816 F.2d 895, 898 (3d Cir. 1987); *cf.* 2 MOORE'S FEDERAL PRACTICE § 12.30(1) (3d ed. 1997) ("Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits related determination.").

Because Johnson's claim arises under the laws of the United States and is neither "immaterial and made solely for the purpose of obtaining jurisdiction" nor "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. at 682-83, the district court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331. Dismissal under Rule 12(b)(1) was therefore erroneous. The district court's reasoning, however, suggests that it dismissed Johnson's complaint on the ground that his allegations did not state a claim cognizable under Title VII. Because the question of whether Apna Ghar is an "employer" for purposes of Title VII has been briefed extensively on appeal by both parties

and *amicus*,[2] we proceed to evaluate the district court's resolution of this question.

In dismissing Johnson's complaint, the district court concluded that the "clear teaching of Morrison [529 U.S. 598 (2000)] is that it would impermissibly stretch the commerce clause to read that provision (which is the source of power for the enactment of Title VII) as extending to . . . Apna Ghar['s] activity." The district court, however, misunderstands *Morrison* and *Lopez*, 514 U.S. 549 (1995), which both struck down federal statutes as unconstitutional exercises of Congress's Commerce Clause power. In *Lopez*, the Supreme Court stated that for an activity to be regulated by Congress under the Commerce Clause, it must be an activity that substantially affects interstate commerce. 514 U.S. at 559. The Court found that the activity that the Gun-Free School Zone Act sought to regulate—the possession of a gun in a local school zone—is not an economic activity that might, through repetition elsewhere, have a substantial effect on interstate commerce. *Id.* at 561. Furthermore, the Court found the Act "is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity was regulated. It [could not], therefore, be sustained under [the Court's] cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect interstate commerce." *Id.* The *Morrison* Court then relied on *Lopez* to find that the Violence Against Women Act similarly did not regulate activity

---

[2] The court appointed Jerold Solovy of the law firm Jenner & Block, LLC to file an amicus curiae brief in support of Johnson, who had filed his appeal *pro se*. The court thanks Mr. Solovy, Barry Sullivan, Jacob Corre, John Joyce, and Jenner & Block for their assistance in our consideration of this appeal.

that substantially affected interstate commerce. *See Morrison*, 529 U.S. at 609-17.

Unlike the parties in *Lopez* and *Morrison*, Apna Ghar does not contend that Title VII's regulation of employment is an invalid exercise of Congress's commerce power. Rather, Apna Ghar merely contends that it is not an employer within the meaning of the statute because it is not "engaged in an industry affecting commerce." *Morrison* and *Lopez* are therefore inapposite, as they do nothing to disturb the well-settled doctrine that, so long as the regulatory statute bears a substantial relation to commerce, a single entity may be constrained by it despite the entity's arguably minimal impact on interstate commerce. *Lopez*, 514 U.S. at 558 (" '[W]here *a general regulatory statute bears a substantial relation to commerce*, the *de minimis* character of individual instances arising under that statute is of no consequence.' ") (quoting *Maryland v. Wirtz*, 392 U.S. 183, 197 n.27 (1968)) (emphasis in original); *Lopez*, 514 U.S. at 560 (citing *Wickard v. Filburn*, 317 U.S. 111, 128 (1942)).[3]

Thus, the narrower question remains whether Apna Ghar is an "employer" for the purposes of Title VII. Under the statute, an "employer" must be "a person engaged in an

---

[3] We previously have rejected similar challenges to other congressional acts that require showing that the defendant's conduct affected interstate commerce. S*ee United States v. Peterson*, 236 F.3d 848, 851-52 (7th Cir. 2000) ("We have long held that the government need only show some actual, even if *de minimis*, effect, or, where there is no actual effect, a realistic probability of an effect, on interstate commerce to bring robbery within its prosecutorial reach.") (Hobbs Act) (citing *United States v. Bailey*, 227 F.3d 792, 797 (7th Cir. 2000)); *see also United States v. Stillo*, 57 F.3d 553, 558 n.2 ("Nor did the *Lopez* decision undermine this Court's precedents that minimal potential effect on commerce is all that need be proven. . . .") (Hobbs Act).

industry affecting commerce," 42 U.S.C. § 2000e(b). An "industry affecting commerce" is defined as:

> any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959, and further includes any governmental industry, business, or activity.

42 U.S.C. § 2000e(h). The Labor-Management-Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*, in turn, incorporates the definition of "affecting commerce" as that set forth in the Labor Management Relations Act (LMRA) and the Railway Labor Act, 29 U.S.C. § 402. The LMRA defines "affecting commerce" to mean "in commerce or burdening or obstructing commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 29 U.S.C. § 152(7).

When the labor law definition of "affecting commerce" was incorporated into Title VII, "the term 'affecting commerce' had been interpreted as vesting in the National Labor Relations Board 'the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause.'" *Martin*, 829 F.2d at 448 (quoting *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226 (1963)). Similarly, in *Polish Nat'l Alliance v. NLRB*, 322 U.S. 643 (1944), the Court stated that, "when [Congress] wants to bring aspects of commerce within the full sweep of its constitutional authority, it manifests its purpose by regulating not only 'commerce' but also matters which 'affect', 'interrupt', or 'promote' interstate commerce." *Id.* at 647 (citations to statutes omitted). Indeed, courts have found activity to affect commerce in situations where a defendant merely

used items that at some point in time moved through interstate commerce, *see United States v. Dye Constr. Co.*, 510 F.2d 78 (10th Cir. 1975) (defendants purchased trucks and insurance policies produced by out-of-state sources), or engaged in arguably local activity that would affect the dynamics of an interstate market, *see Wickard v. Filburn*, 317 U.S. 111 (1942) (farmer's production of wheat for home consumption). Thus, the "affects commerce" hurdle is very low.

Apna Ghar satisfies this low threshold of "affecting commerce." As indicated above, Apna Ghar is a not-for-profit corporation that employs over 20 employees and provides a variety of worthwhile services to its clientele.[4] In the process, it solicits and receives employment applications from out-of-state individuals, maintains telephone service for both in-state and toll-free out-of-state contact, works with out-of-state universities, performs extensive counseling services, accompanies clients to assist with negotiations, provides legal services and transportation services, and provides referrals for shelters, legal services, medical agencies, and housing organizations.

---

[4] Apna Ghar's not-for-profit status does not alter its coverage by Title VII. "Although the term 'industry affecting commerce' may suggest a limitation to commercial enterprises, it is clear that Congress intended to cover all activities affecting commerce, to the extent permitted by the Constitution, regardless of whether they are operated for non-profit or charitable purposes." *Martin*, 829 F.2d at 448. It has long been held that such entities may be "employers" engaged in "industry affecting commerce" for purposes of Title VII. *See id.* (non-profit organization); *See also Bryant v. Int'l Sch. Servs., Inc.*, 675 F.2d 562 (3d Cir. 1982) (non-profit organization engaged in placing American teachers in foreign schools was subject to Title VII as an "employer" engaged in an "industry affecting commerce"); *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973) (non-profit hospital subject to Title VII).

In addition, Apna Ghar receives financial and in-kind support from a variety of individuals and organizations, including some located outside Illinois, and these contributions necessarily impact the interstate flow of such aid to other similarly deserving organizations. Moreover, Apna Ghar provides residential and child support services, and to do so it purchases or receives goods that were manufactured or transported in interstate commerce at some point during their life. Because Apna Ghar's activities, as described above, are "matters which 'affect', 'interrupt', or 'promote' interstate commerce," *Polish Nat'l Alliance*, 322 U.S. at 647, Apna Ghar is engaged in an industry that affects commerce and is properly classified as an "employer" for purposes of Title VII. Dismissal of Johnson's claim was therefore erroneous.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is REVERSED.

A true Copy:

       Teste:

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
